This appeal arises out of the appellant's conviction of first degree rape.
In September 1988, the appellant was indicted by a Montgomery County grand jury for sexual abuse in the first degree, in violation of § 13A-6-66, Code of Alabama (1975), rape in the first degree, in violation of § 13A-6-61(a)(2), Code of Alabama
(1975), and rape in the first degree, in violation of §13A-6-61(a)(1), Code of Alabama (1975). The appellant's first trial ended in a mistrial, after which the appellant was retried, but only on the charge of rape in the first degree by forcible compulsion, in violation of § 13A-6-61(a)(1), Code ofAlabama (1975). The appellant was found guilty in a jury trial of the offense charged, and was thereafter sentenced to a *Page 1267 
term of ten years' imprisonment. This sentence was suspended, and the appellant was placed on five year's supervised probation.
 I.
The appellant argues that the prosecution failed to prove each element of the offense charged beyond a reasonable doubt, and that the trial court therefore erred in denying his motion for a directed verdict of acquittal. Specifically, the appellant contends that the State failed to prove the element of "forcible compulsion," because he contends that the belt he allegedly used to force the victim to engage in sexual intercourse with him is not a "dangerous instrument," as defined by § 13A-1-2(12), Code of Alabama (1975), and because the age, size, and strength of the victim, compared to his own, forecloses the possibility of forcible compulsion. The appellant also appears to argue that the prosecution should have indicted him, if at all, under Alabama's incest statute, §13A-13-3, Code of Alabama (1975), but did not do so because the testimony of S.P., the victim, could not be corroborated, as is required by § 13A-13-3(b), Code of Alabama (1975). He argues that, by prosecuting him under the rape statute, the State has violated the purpose and spirit of the law.
The evidence presented by the prosecution at the appellant's trial tended to establish the following facts:
S.P., the victim of the rape, and several of her siblings lived with her parents. On the morning of Saturday, February 6, 1988, the appellant, who is S.P.'s father, drove her mother and three of her sisters to a laundromat located about twenty minutes from their home, returning to the house alone. At the time the appellant returned, the only occupants of the house were S.P. and her nephew, Anthony Parks. The appellant then instructed Anthony Parks to go to his grandmother's house, which Anthony did, leaving the appellant alone with S.P. After Anthony had left, the appellant approached S.P. and asked her if she was going to "give him some." S.P. responded, "No," and the appellant asked the question a second time, this time with a belt in his hands. S.P. agreed to have sex with the appellant "[b]ecause I thought he would whup me because he'd held up the belt." Thereafter, S.P. and the appellant had intercourse on the den sofa.
Tamika Rene Sanders, after first being qualified by the court as a competent witness, testified that she was ten years old and was the appellant's granddaughter. Tamika testified that, on the morning of February 6, 1988, she was in her aunt's house, which was located next to the house belonging to the appellant. Tamika looked through her aunt's window into the appellant's house, and saw the appellant "messing with" S.P. Tamika testified that, from her vantage point, she could only see the appellant's shadow "moving up and down" on top of the victim, but testified that she knew that the appellant and S.P. were the only ones inside the appellant's house at that time. Tamika further testified that when the appellant got up from the sofa, she saw him pull up his overalls. When Tamika realized what the appellant was doing, she called her brother, Anthony Parks, and her cousin, Vanessa Smith.
Anthony Parks, the appellant's grandson, testified that he also observed the appellant's shadow "going backwards and forwards" on the sofa, and that he saw the appellant zip up his overalls when he got up from the sofa. Anthony then saw the appellant leave the house and get into his car. Anthony testified that the appellant "had his hands in his pants like he was playing with himself." Thereafter, Anthony told his cousin, Vanessa Smith, and his sister, Tamika, to go into the den and see "what was really happening." Anthony testified that when the two girls returned they told him that they saw "some bloody tissue" on the sofa. Anthony likewise testified that the appellant and the victim were the only occupants of the house at the time the incident occurred.
The record indicates that the rape was first reported to Ms. Ladell, a counselor at Jefferson Davis High School, on Monday, February 8, 1988, by Sheila Parks, the victim's sister. Sheila apparently narrated *Page 1268 
the details of the rape to Ms. Ladell in the presence of S.P. who nodded or made other non-verbal gestures to indicate that the facts alleged by Sheila were true. Ms. Ladell then went with S.P. to the office of Corporal Ivory Dotson, the Youth Aid Officer assigned to the high school, and related the details of the crime to Corporal Dotson. Sergeant Barbara Knox, of the Montgomery County Sheriff's Department, had investigated numerous cases of rape and child abuse and had frequently taken vaginal smears and other physical evidence from the persons of sexual assault victims. Sergeant Knox testified that she became involved in this case after receiving a telephone call from Corporal Dotson, who explained the circumstances of the rape to her and then transported S.P. to her office. Sergeant Knox testified that when the victim arrived at her office, Knox filed an incident report and then took a taped statement from her. Knox then testified over counsel's objection that she did not insist that S.P. immediately be examined by a physician since, because, she felt due to the time which had elapsed since the rape, there was little likelihood that any physical evidence, such as the rapist's semen, would be found, and because of prior sexual intercourse committed against the victim by the defendant, there would be no evidence of trauma to the victim's vagina.
The appellant testified in his own behalf and denied raping his daughter.
In Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, Ex parte Cumbo, 368 So.2d 877 (Ala. 1979), the standards of appellate review of a conviction based on circumstantial evidence were described as follows:
 "In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir. 1974); United States v. McGlamory, 441 F.2d 130 (5th Cir. 1971); Clark v. United States, 293 F.2d 445 (5th Cir. 1961).
 "[W]e must keep in mind that the test to be applied is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis but that of guilt; but rather whether the jury might so conclude. Harper v. United States, 405 F.2d 185 (5th Cir. 1969); Roberts v. United States, 416 F.2d 1216 (5th Cir. 1969). The procedure for appellate review of the sufficiency of the evidence has been aptly set out in Odom v. United States, 377 F.2d 853, 855 (5th Cir. 1967):
 " 'Our obligation, therefore, is to examine the record to determine whether there is any theory of the evidence from which the jury might have excluded every hypothesis except guilty beyond a reasonable doubt. Rua v. United States, 5 Cir., 1963, 321 F.2d 140; Riggs v. United States, 5 Cir., 1960, 280 F.2d 949. In Judge Thornberry's words,
 " ' " * * * the standard utilized by this Court is not whether in our opinion the evidence and all reasonable inferences therefrom failed to exclude every hypothesis other than guilt, but rather whether there was evidence from which the jury might reasonably so conclude." ' Williamson v. United States, 5th Cir. 1966, 365 F.2d 12, 14. (Emphasis supplied)
 " 'The sanctity of the jury function demands that this court never substitute its decision for that of the jury. Our obligation is to examine the welter of evidence to determine if there exists any reasonable theory from which the jury might have concluded that the defendant was guilty of the crime charged.' McGlamory, 441 F.2d at 135 and 136.
 "See also Blair v. State, 18 Ala. App. 615, 93 So. 45 (1922). Whether circumstantial evidence tending to connect the defendant with the crime excludes, to a moral certainty, every other reasonable hypothesis *Page 1269 
than that of the defendant's guilt is a question for the jury and not the court. Cannon v. State, 17 Ala. App. 82, 81 So. 860 (1919); see also Evans v. State, 39 Ala. App. 404, 408, 103 So.2d 40, cert. denied, 267 Ala. 695, 103 So.2d 44 (1958)."
Id., at 874-75. See also, Robinette v. State, 531 So.2d 697,698-99 (Ala. 1988).
According to § 13A-6-61(a)(1), Code of Alabama (1975), a male commits the crime of first degree rape if he engages in sexual intercourse with a female by forcible compulsion. "Forcible compulsion" is defined as "[p]hysical force that overcomes earnest resistance or a threat, express or implied, that placesa person in fear of immediate death or serious physical injuryto himself or another person." § 13A-6-60(8), Code of Alabama
(1975). (Emphasis supplied.)
In the present case, all of the necessary elements required to prove rape in the first degree by forcible compulsion were satisfied by the testimony of S.P. She testified to the effect that she had engaged in nonconsensual sexual intercourse with the appellant and that she did so because she was afraid that he would beat her with the belt if she did not. This is sufficient evidence to permit the question of "forcible compulsion" to be submitted to the jury. As this Court held inFlanagan v. State, 533 So.2d 637 (Ala.Cr.App. 1987):
 " 'The degree of force necessary for a conviction need not be such as to place the victim under such reasonable apprehension of death or bodily harm as to overcome her will. It is sufficient that the female was under such duress that the act was accomplished against her consent. Brummitt v. State, Ala. Cr. App., 344 So.2d 1261 (1977).'
 "Long v. State, 370 So.2d 354 (Ala.Crim.App. 1979); Weatherford v. State, 369 So.2d 863
(Ala.Crim.App. 1979).
 " ' "The force necessary to be used, to constitute the crime of rape, need not be actual, but may be constructive or implied. An acquiescence to the act obtained through duress or fear of personal violence, is constructive force, and the consummation of unlawful intercourse by the man thus obtained would be rape." '
 "Weatherford, supra, at 872 (quoting Shepherd v. State, 135 Ala. 9, 12, 33 So. 266, 267 (1903); See also Robinson v. State, 444 So.2d 902
(Ala.Crim.App. 1984). We hold that the evidence was sufficient here, and the question of whether or not 'forcible compulsion' existed was properly submitted for the jury's consideration."
Id., at 641.
Moreover, the appellant was properly charged with rape. The criminality of the appellant's act of having sexual intercourse with his daughter was compounded by the fact that the intercourse occurred as a result of the threat of force. While lack of consent is an element of rape in the first degree under § 13A-6-61(a)(1), it is not an element of incest. See §13A-13-3. Therefore, it is this Court's opinion that the appellant was charged and convicted under the appropriate statute.
The appellant's contention that he was charged with first degree rape and not incest solely because the prosecution could not corroborate S.P.'s testimony, as is required by § 13-13-3(b), is clearly without merit. S.P.'s testimony that the appellant had sexual intercourse with her is corroborated by the testimony of Tamika Rene Sanders and Anthony Lee Parks. While S.P.'s testimony concerning the manner in which she was induced to have sex with the appellant, and concerning the threat the appellant made against S.P.'s mother to keep S.P. from reporting the incident are without corroboration, none of this testimony relates to a material element of incest, and would not have been required in order to obtain a conviction on such a charge.
 II.
The appellant argues that the trial court erred to reversal by allowing Sergeant Barbara Knox, a witness for the prosecution, to testify concerning prior acts of sexual abuse allegedly committed by him against S.P. During direct examination *Page 1270 
of Sergeant Knox, the following exchange occurred:
 "Q: Pursuant to your investigation, what had you learned from S.P. to indicate that there would be no physical evidence?
 "MR. HARRISON: Your Honor, I am going to object to that.
"THE COURT: Overruled.
"MR. HARRISON: That question —
"THE COURT: Overruled.
 "THE WITNESS: According to S.P. in her statement, she had been sexually abused by her father for a period of a couple of years.
 "MR. HARRISON: I object to that and move for a mistrial.
"THE COURT: Denied."
The prosecutor then resumed his direct examination of Sergeant Knox, during which the following took place:
 "Q: You were explaining why there would be no physical evidence with respect to this incident which occurred on February the 6th. Will you continue.
 "A: Because according to the direct testimony from S.P., the sexual abuse had been going on —
"MR. HARRISON: I object and move for a mistrial.
"THE COURT: Overruled.
"THE WITNESS: Okay. The physical evidence —
"MR. HARRISON: Objection.
"THE COURT: Overruled.
 "MR. HARRISON: I'd like to state my grounds for the record.
"THE COURT: Overruled.
 "THE WITNESS: Are you referring to the physical evidence necessary in most assault cases?
"(BY MR. BELSER:)
"Q: On the February 6th assault.
 "A: Okay. There would have been no physical evidence such as semen. There would have been no trauma such as — according to her, she was alleging this was ongoing. There would have been no hairs or —
"Q: Why would there not have been any hairs?
"A: Because she would have already showered.
 "MR. HARRISON: I object to that. She said she would have already showered. She hasn't testified to anything she knows of.
"THE COURT: Overruled."
However, after overruling the appellant's objection, the trial court instructed the jury as follows:
 "THE COURT: Let me instruct the jury. Ladies and Gentlemen of the jury, of course, you are trying a rape case that allegedly occurred on — what day . . . are we speaking of? February 6th, 1988. That is the facts and case you are trying. You are not to try any facts or assume any facts of anything that allegedly occurred or perhaps occurred prior to that time. You are only trying the matter that occurred on February the 6th, 1988. Okay? All right."
As the record indicates, the appellant raised a general objection to the testimony of Sergeant Knox. "[A] general objection is insufficient and its being overruled by the trial court will be affirmed on appeal unless the evidence objected to is patently illegal or irrelevant." C. Gamble, McElroy'sAlabama Evidence, § 426.01(8) (3d ed 1977). See also, Lewis v.State, 488 So.2d 1362 (Ala.Cr.App. 1986); Samuel v. State,455 So.2d 250 (Ala.Cr.App. 1984).
In the present case, Sergeant Knox's testimony was admissible, pursuant to our Supreme court's recent decision inBowden v. State, 538 So.2d 1226 (Ala. 1988), to show the appellant's sexual passion for the victim. In Bowden, the Alabama Supreme Court sought to clarify questions raised in subsequent decisions of this Court concerning the limitations which Anonymous v. State, 507 So.2d 972 (Ala. 1987), placed on the admissibility of collateral sexual offenses committed by the accused against his daughters to prove he committed the charged offense, which also involved one of his daughters. TheBowden Court reiterated the rule of law stated in Anonymous, supra, that such evidence may not be used to prove intent or identity *Page 1271 
where such matters were not in issue, but further held as follows:
 "Because the intent exception is rarely applicable in prosecutions for first degree rape, under our decisions in Anonymous and Ex parte Cofer, [440 So.2d 1121 (Ala. 1983)], it is important to distinguish between intent and motive, two elements that are often confused. 'These are not the same in law. Intent is the ripened purpose to effect a result; while motive is the moving power which leads the mind to desire the result and form the purpose.' Fuller v. State, 269 Ala. 312, 336, 113 So.2d 153, 175 (1959). Motive is defined as 'an inducement, or that which leads or tempts the mind to do or commit the crime charged.' Spicer v. State, 188 Ala. 9, 11, 65 So. 972, 977
(1914). Motive has also been described as 'that state of mind which works to "supply the reason that nudges the will and prods the mind to indulge the criminal intent." ' Gamble, Character Evidence, supra, at 42.
 "Furthermore, testimony offered for the purpose of showing motive is always admissible. McClendon v. State, 243 Ala. 218, 8 So.2d 883 (1942). Accord, Donahoo v. State, 505 So.2d 1067 (Ala.Crim.App. 1986). 'It is permissible in every criminal case to show that there was an influence, an inducement, operating on the accused, which may have led or tempted him to commit the offense.' McAdory v. State, 62 Ala. 154." Nickerson v. State, 205 Ala. 684, 685, 88 So. 905, 907 (1921).
 "Thus, where, as in these cases, a defendant is charged with the first degree rape of his minor daughter, evidence establishing that he had raped and/or committed acts of sexual abuse toward her prior to or subsequent to the offense for which he is charged, is admissible to prove his motive in committing the charged offense. Such evidence tends to establish the inducement (i.e., unnatural sexual passion for his child) that led him to rape or molest her.
 "However, where the defendant is not charged with the offense of incest, as neither Bowden nor Watson was, it becomes questionable whether evidence establishing that the accused raped and/or sexually abused one or more of his other children is admissible to prove his motive in raping the victim, also his child."
Bowden, supra, at 1235 (some emphasis supplied).
It is clear under Bowden that, where, as here, the accused has been charged with the first degree rape of his daughter, collateral sexual offenses allegedly committed by him against that daughter are admissible to establish his unnatural sexual passion for her.
As it cannot therefore be said that Sergeant Knox's testimony was patently inadmissible for any purpose, the appellant's general objection was insufficient to preserve this issue for appellate review. McElroy's Alabama Evidence, supra; Lewis, supra; Samuel, supra.
 III.
The appellant argues that the trial court erred to reversal in allowing Sergeant Knox to testify over objection as to the reasons why she thought a medical examination of S.P. would not have revealed any physical evidence of the alleged rape. The appellant argues that such testimony could have been properly given only by an expert in the field of medicine or forensic science.
 "The question of whether or not a particular witness will be allowed to testify as an expert is largely discretionary with the trial court, whose decision will not be disturbed on appeal except for palpable abuse. Kozlowski v. State, 248 Ala. 304, 27 So.2d 818 (1946); Davis v. State, 352 So.2d 3 (Ala.Cr.App.), cert. denied, 352 So.2d 8 (Ala. 1977). An individual may qualify as an expert witness by study, practice, experience or observation. Radney v. State, 342 So.2d 942
(Ala.Cr.App.), cert. denied, 342 So.2d 947 (Ala. 1977). An expert witness is one who can enlighten a jury more than the average man in the street. Carlton v. State, 342 So.2d 1382 (Ala.Cr.App. 1977). Also see *Page 1272 
C. Gamble, McElroy's Alabama Evidence, § 127.01(5) (3rd.Ed. 1977)."
Gullatt v. State, 409 So.2d 466, 472 (Ala.Cr.App. 1981). See also, Smoot v. State, 520 So.2d 182, 189 (Ala.Cr.App. 1987) (wherein it was held that "any objection to an expert witness on the ground that he or she lacks knowledge goes to the weight rather than the admissibility of his or her testimony").
This Court rejects the appellant's contention that only a physician or forensic scientist would be competent to testify that a medical examination of the victim, under the facts of this case, would have been pointless. This observation could also be made by one who routinely investigates alleged sexual assaults and who frequently assists in the collection of physical evidence from the persons of the victims.
The record indicates that Sergeant Knox was well qualified to testify as an expert regarding the criminal investigation of sexual assaults. Sergeant Knox had been employed as a criminal investigator by the Montgomery County Sheriff's Department for about six years and specialized in rape and child abuse cases. Knox had performed numerous medical examinations of sexual assault victims in the presence of a physician, and had also taken several courses on the subject of evidence collection.
As Sergeant Knox was properly qualified as an expert in the investigation of sexual assault cases, the trial court properly permitted Sergeant Knox to give her opinion as to why no medical examination of S.P. was necessary. McElroy's AlabamaEvidence, supra, at § 128.06, reads as follows:
 "§ 128.06. Expert testimony as to carefulness, propriety, suitability of conduct
 "An expert witness is allowed to give his opinion as to whether specified conduct was or was not careful, suitable or proper if the merit or quality of the questioned conduct is not within the ordinary cognizance of the jury. There is authority to the effect that the expert must detail the facts upon which he bases his opinion. Any failure to so state the facts prior to giving the opinion, however, would be rendered harmless error if the facts were then elicited in the cross-examination of the witness."
After Sergeant Knox testified that she did not believe a medical examination of S.P. would have been beneficial, she testified as to the reasons for her conclusion: i.e., that the rape had occurred two days earlier; that S.P. had showered after the incident and had, most likely, washed away any traces of the appellant's semen or pubic hair; and that, because S.P. told her the appellant had raped her on several previous occasions, Knox did not believe there would be any evidence of trauma around the area of S.P.'s vagina. Sergeant Knox's testimony was proper.
 IV.
The appellant next argues that the trial court erred in charging the jury as follows:
 "I charge you the force required to consummate the crime against a mature female is not the standard for application in a case in which the alleged victim is a child 16 years of age.
 I charge you the force need not have been physical force. It was sufficient if it was a constructive force such as duress or being put in fear.
 "I charge you a conviction need not be such as to place the victim under such reasonable apprehension of death or bodily harm as to overcome her will. It is sufficient that the female was under such duress that the act was accomplished against her consent."
The appellant contends that this charge is erroneous, because, he says, it ignores the statutory definition for forcible compulsion and "left the jury guessing as to what standard applied." The appellant further argues that the court's charge is legally incorrect, because, he says, a 16-year-old female is not a "child," but rather an adult, for the purposes of engaging in sexual intercourse. §13A-6-70(c)(1), Code of Alabama (1975).
Prior to that portion of its oral charge, the court had charged the jury as follows: *Page 1273 
 "The defendant is charged with rape in the first degree. . . . Section 13A-6-61 as relates to this case defines rape in the first degree as follows: It states a male commits the crime of rape in the first degree if he engages in sexual intercourse with a female by forcible compulsion. I will read the statute again. It's not to emphasize it, but just for your education. A male commits the crime of rape in the first degree if he engages in sexual intercourse with a female by forcible compulsion.
 "What does 'intercourse' mean and what does 'forcible compulsion' mean? Section 13A-6-60 reads as follows:
 Paragraph one or section one. Sexual Intercourse. Such term has its ordinary meaning and occurs upon any penetration, however, slight; emission, that is, ejaculation, is not required. Sexual Intercourse. Such term as its ordinary meaning and occurs upon any penetration, however slight, emission, which is another word for ejaculation, is not required. Forcible Compulsion. Paragraph eight. Forcible compulsion means physical force that overcomes earnest resistance or a threat, express or implied, that places a person in fear or immediate death or serious physical injury to himself or another person. Forcible Compulsion. Physical force that overcomes earnest resistance or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person. Now, that is the way the law defines, of course, rape in the first degree."
"When reviewing a judge's oral charge, 'each statement made by a judge to the jury should be examined in light of the entire charge and . . . isolated statements which appear prejudicial when taken out of context may be innocuous when viewed in light of the entire trial." Kennedy v. State,472 So.2d 1092, 1103 (Ala.Cr.App. 1984), aff'd, 472 So.2d 1106
(Ala. 1985), cert. denied by Kennedy v. Alabama, 474 U.S. 975,106 S.Ct. 340, 88 L.Ed.2d 325 (1985), (citation omitted). In determining whether there is an error in a jury instruction, the instruction must be considered as a whole. Harbor v. State,465 So.2d 455, 459 (Ala.Cr.App. 1984), writ quashed, Ex parteHarbor, 465 So.2d 460 (Ala. 1985). "The language of a charge must be given a reasonable construction, and not a strained and unreasonable one." Harris v. State, 394 So.2d 96, 100
(Ala.Cr.App. 1981).
Contrary to the appellant's claim, the trial court did not "ignore" the statutory definition of "forcible compulsion." In fact, a verbatim description of "forcible compulsion," as defined by § 13A-6-60(8), was contained in the court's charge. Moreover, the court correctly charged the jury as to the standard of force or duress required to constitute "forcible compulsion" under Flanagan, supra. While an instruction as to a "totality of the circumstances" analysis for determining the existence of forcible compulsion may have assisted the jury,Parrish v. State, 494 So.2d 705, 713 (Ala.Cr.App. 1985), its omission from an otherwise adequate instruction is not error.
Finally, the court's use in its oral charge of the phrase "a child 16 years of age," and its reference to a different standard for determining whether the required physical force may have created some confusion and may be subject to criticism, in that, under Alabama law, a female 16 years of age is technically not a "child," but is one capable of consenting to sexual intercourse. § 13A-6-70(c)(1), Code of Alabama
(1975). In the present case, however, the appellant steadfastly denied that the rape ever took place. Thus, age and its effect upon consent are not issues here, and any prejudicial impact the appellant might have suffered due to the use of the word "child" was harmless. Further, its use in the present case to illustrate the youth of the victim as compared with the age of the appellant would be proper under the "totality of the circumstances" approach advocated by Parrish, supra.
 V.
The appellant raises other issues for this Court's review; however, no discussion of those issues is warranted, as they are without merit. *Page 1274 
For the reasons stated above, the judgment of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur.