The appellant, Michael Eugene Adams, was charged in separate indictments with the offenses of attempted murder, robbery in the first degree, rape in the first degree, and sodomy in the first degree, said offenses being in violation of §§ 13A-4-2,13A-8-41, 13A-6-61, and 13A-6-63, Code of Alabama 1975, respectively.
After a jury trial, the appellant was found guilty of attempted murder, rape in the first degree, and sodomy in the first degree. He was also convicted of theft in the third degree, a lesser included offense of robbery in the first degree.
The appellant was sentenced by the trial court to life imprisonment on the attempted murder conviction, 20 years in prison on the first degree rape conviction, 20 years in prison on the first degree sodomy conviction, and 1 year in the county jail for the misdemeanor theft conviction. All sentences were ordered to run consecutively.
The appellant raises four issues on appeal.
 I
The appellant first contends that the trial court erred by overruling his objection when the prosecutor allegedly argued impeachment evidence to the jury as substantive evidence.
Specifically, the appellant contends that the prosecution argued in closing that the appellant had left town on February 4, 1990, which was the date of the various assaults against the victim. The appellant argues that the only evidence of this fact was introduced by the state on direct examination of the appellant's mother. This evidence was in the form of a prior inconsistent statement made by the mother to police. In a second statement to police, the appellant's mother changed that first statement and said that the appellant had left town on February 5, the day after the offenses were committed. This was also her testimony at trial. Thus, the appellant contends that any evidence of his leaving town on February 4 was introduced for impeachment purposes only and, as such, was not within the realm of evidence which could be argued by the prosecutor during closing argument.
The appellant argues that remarks concerning his "flight" from town on February 4 rather than February 5 were more damning to him and thus prejudiced him before the jury. We do not agree.
The appellant in this case was faced with overwhelming evidence of his guilt at the time that both sides rested. That evidence included the following facts.
In the early morning hours of February 4, 1990, the appellant entered a bar near Prichard, Alabama. The victim was in the bar at the time he entered. After engaging in a conversation with the victim and buying two beers, the appellant offered to drive the victim home. After the two were in the automobile, the appellant asked the victim if she had some time to kill; she stated that she did, and the two drove to an area known as Soul City near Prichard, where the appellant said he had something that he wanted to show her. When he turned off the highway, the car became stuck in a hole. The two attempted to push the car out of the hole, but were unable to do so. When it became apparent that they could not push it out, the appellant went to find something to place under the tire that was in the hole, and the victim fell asleep in the car.
A short time later, the victim was awakened by the appellant's hitting her on *Page 1267 
the head and telling her to get out of the car. When she refused, he pulled down her pants and attempted to force her to engage in sex with him. When this attempt failed, he forced her from the car and over to a clearing in the woods. There, he repeatedly raped and sodomized her. He then pulled a knife from his pocket and told her that he was now going to kill her. He cut her breast, wiping the blood on her face. He then cut her throat and walked away, leaving the car stranded in the hole and taking with him $5.00, which he had removed from her pants. All this occurred during the early morning, day-light hours of Sunday, February 4, 1990.
The victim managed to walk to a nearby highway. A passerby drove her to a hospital where she was admitted. The victim later identified the appellant as the man who committed these assaults on her.
Dr. Donna Cynon Dyess, M.D., testified that she treated the victim on February 4, 1990, and that the victim had a large cut on the neck muscles, which extended to her trachea, and that two large veins were cut. Further evidence established that a rape kit was used to examine the victim, and that sperm was contained in the vaginal swab.
Bobbie Harden testified that he had seen the appellant walking near Soul City shortly before 10:00 a.m. on February 4, 1990, and that "He [the appellant] just looked rough. . . . He just looked rough."
Other testimony was that the appellant told his mother that the car he was driving had been stolen and that the appellant and his mother argued over whether to contact the authorities. The police were called and the car was reported stolen. Shortly thereafter, the appellant left the residence from which the police had been contacted, allegedly to get a "drink." Police arrived at the residence shortly thereafter. The appellant was arrested several days later in Childersburg, Alabama.
The state argued that the appellant had committed the various assaults upon the victim and had fled, on that same day, to Childersburg, Alabama. This flight, the state argued, was in an attempt to avoid apprehension by the authorities. This inference could legitimately be drawn even when the prior inconsistent statement of the mother is discarded.
Judge Bowen, writing for this court, in Donahoo v. State,505 So.2d 1067, 1072 (Ala.Cr.App. 1986), held:
 "The prosecutor has the right to present his impressions from the evidence. He may argue every matter of legitimate inference and may examine, collate, sift, and treat the evidence in his own way. Hayes v. State, 395 So.2d 127, 149
(Ala.Cr.App. 1980), cert. denied, 395 So.2d 150
(Ala. 1981); McQueen v. State, 355 So.2d 407, 411
(Ala.Cr.App. 1978)."
Without the first statement of the appellant's mother, the state had the following facts in evidence: 1) The automobile which the appellant was driving was found at the scene of the crime; 2) the appellant was seen shortly after the crimes had been committed in the area where the crimes had been committed; 3) Bobbie Harden testified that the appellant looked "rough" at a time shortly after the incident occurred; 4) Jimmy Franks, a friend of the appellant and the appellant's mother, testified that the appellant left the house from which the police were called by the appellant's mother to report that the car which the appellant had been driving was stolen and that he did not see the appellant again until after the appellant was arrested; and 5) Labarron Smith, an investigating officer, testified that the appellant was arrested in Childersburg on February 7, 1990.
From the above evidence, the prosecutor could argue flight on the part of the appellant because there was other evidence to support this statement. Further, he could ". . . collate, sift, and treat [the] evidence in his own way." Donahoo, id. It is not necessary that the alleged flight take place on the same day as the crime.
This court held in Whitlow v. State, 509 So.2d 252, 256
(Ala.Cr.App. 1987), that "we *Page 1268 
should consider the impact of the prosecutor's statements in a particular trial and not in the abstract," quoting Wysinger v.State, 448 So.2d 435 (Ala.Cr.App. 1983). "Liberal rules must be allowed counsel in drawing inferences from the evidence in his argument to the jury." Sasser v. State, 494 So.2d 857, 860
(Ala.Cr.App. 1986). Here, the prosecution could reasonably argue that the appellant fled the Mobile area on February 4, 1990, in an effort to avoid apprehension.
In Armstrong v. State, 516 So.2d 806, 809 (Ala.Cr.App. 1986), we held:
 "The prosecutor's statements are not evidence. Henry v. State, 468 So.2d 896, 899
(Ala.Cr.App. 1984), cert. denied, 468 So.2d 902
(Ala. 1985). Further, prosecutors are to be allowed a wide latitude in their exhortations to the jury. Varner v. State, 418 So.2d 961 (Ala.Cr.App. 1982). 'Statements of counsel in argument must be viewed as in the heat of debate and must be valued at their true worth rather than as factors in the formation of the verdict.' Orr v. State, 462 So.2d 1013, 1016 (Ala.Cr.App. 1984)."
In this case there has been no showing that the appellant was prejudiced by the closing argument of the prosecutor. As has been stated, this appellant was faced with overwhelming evidence as to his guilt. We cannot conceive that the jury would have reached a different verdict had the prosecutor not argued that the appellant fled the area on the day after, rather than on the day of, the commission of the crimes.
Our Supreme Court held in Bayne v. State, 375 So.2d 1237,1238 (Ala. 1978), that "[c]ounsel should be given wide latitude in arguing to the jury; and only where the defendant is prejudiced by the state's argument is reversal mandated." We find no prejudice.
 II
The appellant contends that the trial court erred by refusing his written requested jury charge number 12. That requested charge read as follows:
 "I charge you, members of the jury, that if upon a consideration of all the evidence, there is a probability of the defendant's innocence, then in such event, there is a reasonable doubt of his guilt, and the defendant should be acquitted."
This court held in Blalock v. State, 369 So.2d 35, 37
(Ala.Cr.App. 1979), cert. denied, 369 So.2d 38 (Ala. 1979), that a refusal of this type of requested instruction would constitute error except where the court adequately charges the jury on the concept of reasonable doubt in other given charges or in the court's oral charge.
The appellant argues that "although the trial court here charged the jury thoroughly on reasonable doubt, its instructions were, unfortunately, constitutionally infirm."
The portion of the court's charge concerning the concept of reasonable doubt objected to by the appellant is as follows:
 "A reasonable doubt is not a capricious, or fanciful, or vague, or imaginary doubt; rather, a reasonable doubt is an actual and substantial doubt which, as I say, must arise from a consideration — or may arise from a consideration of all of the evidence, or any part of it, or a lack of it. I charge you that if you are convinced from the evidence beyond a reasonable doubt and to a moral certainty of the guilt of the defendant, then it would be your duty to find the defendant guilty because under those circumstances you are convinced beyond a reasonable doubt."
The appellant argues that by using the terminology "actual and substantial doubt" and "to a moral certainty," this charge runs afoul of Cage v. Louisiana, ___ U.S. ___, 111 S.Ct. 328,112 L.Ed.2d 339 (1990). In that case the United States Supreme Court held that when the terms "substantial doubt" and "graveuncertainty" are considered with the reference to the term *Page 1269 
"moral certainty," a reasonable juror could find that the degree of proof required to convict is less than that required by the Due Process Clause. (Emphasis added.)
We note, however, that in this case, the trial court did not couple the phrases "actual and substantial doubt" and "grave uncertainty" as did the trial court in Cage.
It has long been the position of this court that the trial court's oral charge to the jury may not be viewed in bits and pieces but rather must be viewed in its entirety. Smith v.State, 585 So.2d 223 (Ala.Cr.App. 1991); Parks v. State,565 So.2d 1265 (Ala.Cr.App. 1990); Williams v. State, 538 So.2d 1250
(Ala.Cr.App. 1988); Lambeth v. State, 380 So.2d 923 (Ala.), on remand, 380 So.2d 925 (Ala.Cr.App. 1979). We are of the opinion that the trial court correctly charged the jury on the theory of reasonable doubt. See Smith. The trial judge did not use the phrase "grave uncertainty" in his charge, and for that reason, the charge did not violate Cage.
 III
The appellant next contends that the trial court erred by refusing his written requested jury charge number 18. That charge was as follows:
 "I charge you, members of the jury, that if after a consideration of all the evidence, the guilt of the defendant depends upon the testimony of a single witness, of the truth of which the jury has a reasonable doubt, the defendant cannot be convicted."
The appellant cites in support of his argument, Cook v.State, 437 So.2d 1378 (Ala.Cr.App. 1983), in which a similar charge was requested. Testimony at that trial was elicited from a neighbor of the victim concerning the victim's reputation. InCook, the witness for the defense testified that she was a neighbor of the victim and that "the victim's general reputation and her general reputation for truth in the community were bad and that she would not believe the victim under oath." Cook, 437 So.2d at 1378. This case can be distinguished from Cook. Cook was charged with rape.
Judge Bowen, writing in Cook, held that "under the evidence
[of the case, the requested charge] was due to be given." Cook, 437 So.2d at 1379. (Emphasis added.) In the instant case, however, there was no showing of bad reputation either generally or for truth and veracity. Thus, the trial court correctly refused this charge at trial under the evidence.
 IV
Lastly, the appellant contends that the trial court erred by refusing his written requested jury charge number 19.
Requested charge number 19 was as follows:
 "I charge you, members of the jury, that if the evidence convinces you that [the victim] is a woman of bad character, and unworthy of belief, then you may disregard her evidence altogether."
The appellant contends that the lead case in support of his argument is Ashlock v. State, 367 So.2d 560 (Ala.Cr.App. 1978), writ denied, 367 So.2d 562 (Ala. 1979). The record in Ashlock
revealed the following:
 "Throughout the course of the trial evidence showing the bad character of Wanda Cassidy, the State's chief witness, was introduced. Among other acts it was shown that she assisted the appellant in escaping even though she knew he committed the murder. She was absent without leave from the Army. Her nickname was "Wicked Wanda" which she was called "by everybody." Her former husband testified that the appellant and his brother were "living with" her during the week but had to find another place to stay when her husband, who was on prison work release, came home on the weekends.
 "The trial judge refused to give the following written charge requested by the appellant. *Page 1270 
 " 'I charge you, gentlemen of the jury, if the evidence convinces you that Wanda Cassidy is a woman of bad character, and unworthy of belief, then you may disregard her evidence altogether.' "
This court held that it was error for the trial court to withhold the requested jury instruction in Ashlock. In that case there was clear evidence of the witness's bad character. No such evidence is revealed, after careful review of the record, in the case now before us. In fact, the defense in this case did not call any witnesses to testify at trial. Defense counsel did, however, during cross-examination elicit certain testimony concerning the lifestyle of the victim; however, nothing even remotely rising to the showing of bad character inAshlock was testified to during this trial.
For the foregoing reasons, the judgment of the trial court is due to be, and it is hereby, affirmed. AFFIRMED.
All the Judges concur.