The appellant, James Sciscoe, was indicted and charged with rape in the first degree, sodomy in the first degree, and sexual abuse in the first degree of T.P., who is a child under the age of 16 years, in violation of §§ 13A-6-61, -63, and -66, Code of Alabama 1975. The appellant was also charged in another indictment with sexual abuse in the first degree of J.P., who is a child under the age of 16, in violation of § 13A-6-66, Code of Alabama 1975. Following a jury trial, the appellant was found guilty of sodomy in the first degree, as charged in count two of the indictment; guilty of sexual abuse in the first degree, as charged in count three of the indictment; and guilty of sexual abuse in the first degree, as charged in the separate indictment. The rape charge against the appellant was dismissed on motion for judgment of acquittal. The appellant was sentenced to 10 years' imprisonment on each of the sexual abuse charges and to 15 years on the sodomy charge. The court split these sentences and required the appellant to serve a term of three years in the state penitentiary on each case, the sentences to run concurrently.
At trial, the State's evidence tended to show that T.P., age nine, and her sister, J.P., age seven, lived with their mother and the appellant in Mobile County, Alabama. During the summer of 1990, S.S., mother of the two girls, was working at the Pizza Hut restaurant in Gulf Shores, Alabama, and she would leave the girls with the appellant. During this time, T.P. became withdrawn and acted strangely. Because of this behavior, T.P. was placed in the psychiatric center at Knollwood Hospital, where she remained for about a month. Later, T.P. and J.P. were taken into custody by the Department of Human Resources.
Both T.P. and J.P. testified that, during the summer of 1990, the appellant did things to them that they did not like. They stated that the appellant touched and licked their "privates." Both girls also testified that the appellant would touch their bodies with his "private" and ejaculate. T.P. stated that the appellant would do these things to her every day her mother was not home.
Dr. Phillip Madonia conducted a physical examination on T.P. and stated that although her genitalia appeared normal, her rectum easily accepted his finger. Dr. Madonia stated that as he examined her rectally, T.P. stated, "That is where he put it."
J.P.'s kindergarten teacher, Ms. Spence, stated that J.P. often came to school dirty and unkempt. Ms. Spence testified that J.P. told her that she had been licked on her genitals. Ms. Spence reported this abuse to another kindergarten teacher, Ms. Vanhoosen.
T.P. was examined by both a family therapist and a psychiatrist. Each described T.P. as very nervous and withdrawn. Both doctors were of the opinion that T.P. had been sexually abused.
T.P. and J.P. were examined by criminal investigator, Nick LaManna, who had completed 100 of 150 hours of course material to become a certified child sexual abuse intervention specialist. He stated that he had investigated 150 child sexual abuse cases. Following his interviews with the girls and other witnesses, LaManna was of the opinion that T.P. and J.P. had been sexually abused. *Page 204 
 I
First, the appellant contends that the State failed to prove that the acts complained of in the indictment took place in Mobile County, thus, he contends, venue was not proven. This court has held that "to preserve an issue concerning venue (or lack thereof), the challenging party must object before a verdict is reached. Therefore, this issue is deemed waived because there was no objection at trial specifically raising this issue." Kelley v. State, 568 So.2d 405, 407
(Ala.Crim.App. 1990). This issue has not been preserved and cannot be considered by this court because when the appellant moved for judgment of acquittal at the conclusion of the State's case, he failed to assert that the State failed to prove venue.
 II
The appellant's second contention is that the trial court abused its discretion by allowing Investigator Nick LaManna to testify as an expert and to give an opinion on whether the alleged victims had been sexually abused. Specifically, the appellant argues that the expert testimony offered by the State failed to pass the Frye test, which states that expert testimony concerning a scientific or medical principle will be admissible only when the proponent of the evidence establishes that the principle has achieved general acceptance in the scientific field to which it belongs. Frye v. United States,293 F. 1013 (D.C. Cir. 1923).
This court has previously held that "there are four general factors that should be considered [when determining whether such evidence should be admitted in cases of child abuse]: necessity, reliability, understandability, and importance."Sexton v. State, 529 So.2d 1041, 1049 (Ala.Crim.App. 1988). InSexton, the expert witness was asked to describe the "generally accepted symptoms" of a child sexual abuse victim. The defendant objected because this was an "impermissible opinion on the ultimate fact in issue." After weighing these four factors, this court held that the expert's testimony was admissible, even though the expert testimony did not have a high degree of reliability. The court stated the following in upholding the admissibility of the evidence:
 "Our weighing of the factors convinces us that Dr. Renfro's testimony was admissible. Though it may not have possessed a high degree of reliability (in the sense that '[t]he behavioral scientific literature conclusively demonstrates that there is no general acceptance of the ability of experts in the field to diagnose a child as having been sexually abused,' id. at 38), it did have a high degree of understandability (in the sense that it was easily explained and not likely to overwhelm the jury). Most significantly, even though its importance to the issue being decided was somewhat high, its necessity was extremely great."
Sexton, at 1049 (emphasis original).
Furthermore, the investigator, Nick LaManna, clearly qualified as an expert witness. This court has held:
 "The question of whether or not a particular witness will be allowed to testify as an expert is largely discretionary with the trial court, whose decisions will not be disturbed on appeal except for palpable abuse. . . . An individual may qualify as an expert witness by study, practice, experience, or observation. . . . An expert witness is one who can enlighten a jury more than the average man in the street."
Parks v. State, 565 So.2d 1265, 1271 (Ala.Crim.App. 1990). In the instant case, LaManna had attended several regional and local conferences regarding child sexual abuse cases and had completed 100 of the 150 academic hours necessary to become a certified child sexual abuse intervention specialist.
Furthermore, LaManna had instructed other law enforcement officers in courses on child sexual abuse. LaManna testified that he had investigated approximately 150 child sexual abuse cases. LaManna testified that after interviewing T.P. and J.P., he was of the opinion that both had been sexually abused. Based upon the factors specified in Sexton, we conclude that LaManna's testimony was admissible. *Page 205 
We conclude that based upon his training and experience, LaManna qualified as an expert in the field of child sexual abuse and that the trial court did not abuse its discretion in accepting his testimony.
 III
The appellant next argues that the State failed to establish a prima facie case and erred in denying his motion for judgment of acquittal on the grounds that the State failed to present sufficient evidence to sustain his conviction.
Section 13A-6-63, Code of Alabama 1975, states:
 "(a) A person commits the crime of sodomy in the first degree if:
". . . .
 "(3) He, being 16 years or older, engages in deviate sexual intercourse with a person who is less than 12 years old."
Section 13A-6-66, Code of Alabama 1975, defines sexual abuse:
 "(a) A person commits the crime of sexual abuse in the first degree if:
". . . .
 "(3) He, being 16 years old or older, subjects another person to sexual contact who is less than 12 years old."
Based upon the trial testimony of T.P. and J.P., as well as other witnesses, it was reasonable for the jury to conclude that there was sufficient evidence to convict the appellant of sodomy and sexual abuse. The State's evidence established that the appellant, a 38-year-old man, licked the vagina of 9-year-old T.P., rubbed his penis on her, fondled her, and placed his penis in her anus. Medical testimony showed that T.P.'s anal opening could readily accept an index finger and that during her anal examination, T.P. stated, "That is where he put it," referring to the appellant. Further, the evidence revealed that the appellant had fondled 7-year-old J.P.'s vagina and touched J.P. with his penis. Finally, expert testimony indicated that T.P. and J.P. had been sexually abused. The expert had interviewed both the children separately on two separate occasions.
 IV
The appellant, citing Cage v. Louisiana, 498 U.S. 39,111 S.Ct. 328, 112 L.Ed.2d 339 (1990), claims that the trial court erred in its oral charge to the jury when it used the phrase "to a moral certainty" in explaining the principle of reasonable doubt. This court addressed this issue:
 "The question of exactly what language would possibly cause a jury instruction to lead a juror to believe that a lesser degree of proof was required was further clarified by the United States Supreme Court in a memorandum decision in which the Court denied certiorari. Gaskins v. McKellar, ___ U.S. ___, 111 S.Ct. 2277, 114 L.Ed.2d 728 (1991). In that memorandum opinion, Justice Stevens wrote:
 " 'One of the questions presented in the certiorari petition is whether our per curiam
decision in Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), announced a new rule. This question, however, would only be presented by the record if the instructions in this case contained the same flaw as the instructions in Cage. In Cage, the jury was instructed that a reasonable doubt "must be a doubt as would give rise to a grave uncertainty. . . ." Id. at ___ 111 S.Ct. at 329. Because the instructions to the jury in this case did not contain the improper language, the question whether Cage announced a new rule is not actually presented here. For this reason, I think the Court has correctly decided not to grant certiorari to review that question.' Id.
 "Similarly, in the present case, the language concerning 'grave uncertainty,' which was condemned in Cage v. Louisiana, supra, was not present. Moreover, '[t]his court has previously held that the mere use of some terminology which happened to also appear in Cage does not necessarily constitute reversible error. See, Williams v. State, 601 So.2d 1062
(Ala.Cr.App. 1991); Adams v. State, 587 So.2d 1265
(Ala.Crim.App. 1991).' Earhart v. State, 593 So.2d 119 (Ala.Crim.App. 1991). *Page 206 
Thus, the trial court's instruction to the jury concerning the reasonable doubt standard in the present case was proper."
Smith v. State, 588 So.2d 561 (Ala.Crim.App. 1991).
We hold that the trial court's instruction as to reasonable doubt was not error. The language condemned in Cage was not present in this case.
The judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.