McMILLAN, Judge.
The appellant was convicted of theft of property in the first degree and was sentenced to life imprisonment pursuant to the Habitual Felony Offender Act.
Glen and JoAnn Stroud testified that they were having problems with JoAnn Stroud’s 1976 Subaru automobile. The vehicle was taken to the appellant’s place of business, which was an automobile repair shop. Glen and JoAnn Stroud both testified that the trouble was with the vehicle's transmission. The appellant asked Glen Stroud to allow him to fix the vehicle, alleging that he was a foreign car specialist. After inspecting the automobile, the appellant informed Glen Stroud that he could either purchase a rebuilt transmission or a new transmission. The new transmission would cost $1,455. After speaking with his wife, Stroud telephoned the appellant and informed him that they wanted a new transmission. The appellant informed Stroud that he would have to get the transmission from another state and it would take approximately three days. The price of $1,455 was agreed upon. He further testified that he would not have paid that amount for a rebuilt transmission and had been quoted a price of approximately $800 for such a transmission. The cost was paid in two installments.
JoAnn Stroud retrieved the vehicle and, one day later, transmission fluid began pouring from the automobile. The appellant was contacted and the car was taken back to his shop. The appellant informed the Strouds that the transmission had a defective part. After the appellant informed them that the repairs had been made, the car was picked up. Soon the transmission began slipping and leaking oil. Again, repairs were to be made. JoAnn Stroud was contacted by Rick Tennin, who worked at Harlow’s Transmission, and stated that he had actually done the work on her automobile. He further informed her that he had rebuilt the transmission in her automobile and had charged the appellant $300 for doing so. Thereafter, Glen Stroud asked the appellant if he had put a new transmission in the vehicle and the appellant responded that he had.
I
The appellant argues that the State did not provide sufficient evidence that the value of the property exceeded $1,000, as required by § 13A-8-3, Code of Alabama (1975). The record indicates that the trial court stated, “With regard to the value in this case or the amount of the loss, it has been stipulated that they paid fourteen hundred and fifty-five dollars.” A receipt was introduced into evidence showing that the appellant was paid $1,485, thirty dollars of which the victims testified was paid for new brake pads. Moreover, the indictment charges the appellant with knowingly obtaining or exerting unauthorized control over, or knowingly obtaining by deception, “control over $1,455 in lawful currency or coinage, or currency and coinage, of the United States of America.” The receipt was evidence that the victims paid that amount. The appellant was not charged with the theft of the transmission.
II
The appellant argues that the trial court erred in allowing Ricky Tennin to testify concerning a separate offense when the victim of that offense was not present at trial for purposes of cross-examination. *793 The record indicates that Rick Tennin testified that he was present at the appellant’s shop when Harry Radley brought his automobile into the shop for repairs. The appellant was to put a factory rebuilt engine in the automobile. Rick Tennin further testified that he saw the engine which was placed in the vehicle and that it was a “used engine.” He testified that the engine was painted placed on a crate and that a tag was attached to it by the appellant which stated: “Factory rebuilt.” Defense counsel objected to this line of questioning on the grounds that Radley was not present to testify or be cross-examined. Although he contended that his grounds for the exception was not hearsay, that objection was obviously his intention. No testimony was introduced on direct examination of Rick Tennin as to any statements made by Radley. Before this testimony was heard in the presence of the jury, the trial court instructed the jury as follows:
“Ladies and gentlemen, I am going to allow the State to make some inquiries of this witness about a transaction that the defendant, Mr. Salter, had with a Mr. Harry Radley. And the only reason that I am going to do that is because inasmuch as the State has to prove in this case Mr. Salter’s intent or state of mind at the time of the transaction that you are concerned with in this case, the law says that if there are similar transactions that the defendant has had with other people, that those transactions are admissible for you to look at in determining Mr. Salter’s state of mind or whether or not he intended to deceive the victims in this case. And that is the only purpose for which it is offered, and that is the only purpose for which you may receive it as evidence in this case in determining whether or not he had the requisite intent in this case.”
On appeal, the appellant concedes that this evidence was admissible under the plan, design, intent, and motive exception to the collateral offense exclusionary rule. He again asserts that only Radley should have been allowed to testify to what transpired, thereby again apparently arguing that the testimony was hearsay.
“It has been recognized that a person’s design, plan or intent to do a certain act is relevant to prove that he did indeed do the particular act in question. Among the ways of proving that he had the design or plan is to show statements by him, prior to the claimed act, indicating that he had the design.” C. Gamble, McElroy’s Alabama Evidence (3d ed. 1977), § 262.01(2) (footnotes omitted).
“A statement by the accused, before the time of the alleged criminal act, asserting a design or emotion in him which points to his guilt is admissible against him as an admission. Consequently, there is neither need nor occasion for the prosecution to rely upon the hearsay exception for a statement of one’s own state of mind or emotion as the basis for proving such a statement.”
McElroy’s, § 264.01(1). See also McElroy’s, § 44.01.
Furthermore, the conduct testified to by Rick Tennin was an admission and was admissible as circumstantial evidence rather than for its assertive, testimonial value. McCormick, Evidence (1972), § 262.
“The existence of a design or plan to do a specific act is relevant to show that the act was properly done as planned. The design or plan, being thus in its turn a fact to be proved, may be evidenced circumstantially by the person’s conduct but, as a condition of mind, the plan or design may also, it is clear, be evidenced under the present exception by the person’s own statements as to its existence.” 6 Wigmore, Evidence, § 1725 (Chadboum rev. 1976) (Emphasis in original.)
Thus, Tennin’s testimony concerning what transpired between the appellant and Harry Radley was properly admitted into evidence.
Ill
The appellant argues that the trial court erred in sustaining the prosecution’s objection to testimony concerning a witness’s satisfaction with automobile work previously performed by the appellant. *794 The appellant contends that the testimony should have been admitted to negate the element of intent to defraud. The record indicates that when the defense witness was asked if he was satisfied with the work performed by the appellant, the prosecutor objected and the trial court sustained the objection. Thereafter, a bench conference was held wherein defense counsel maintained that this testimony was offered as rebuttal to the State’s proof of intent through evidence of a separate transaction which occurred between the appellant and Harry Radley. He further maintained that the testimony was not offered as character evidence. The trial court responded:
“Well, it sounds like it obviously is character — his character would be relevant in the case, but I just don’t believe under these circumstances — I know what the purpose of it is, but the form of it is that you are introducing a specific prior act to show that he is — he acted in an honest manner. And I understand that, but I don’t think you can do it that way. His general character in the community for being a trustworthy and honest businessman, I assume, would be admissible, but I don’t think you can do it by a specific occasion as you have done here, and that is why I sustained the objection.”
Specific good acts are not admissible to show that the appellant’s conduct conformed to such good acts at the time of the offense.
“One of the cardinal principles of the common law is that a person’s character, good or bad, offered for the purpose of showing his conduct on a specified occasion, is not provable by evidence of his specific acts or course of conduct. The policy behind this rule is that the reception of such evidence would result in an intolerable confusion of the issues.”
C. Gamble, McElroy’s Alabama Evidence (3d ed. 1977), § 26.01(1) (footnotes omitted).
Despite the appellant’s argument that it would be fundamentally unfair to allow the prosecution to prove bad intent by introducing collateral bad acts and not allow the defense to introduce collateral goods acts to rebut the State’s evidence and prove lack of bad intent, the trial court properly excluded that evidence. The law has carved-out exceptions to the exclusionary rule to allow the admission into evidence, under certain circumstances, of collateral bad acts or offenses. No such exceptions exist for the introduction of collateral good acts. While the “reply in kind” doctrine is based on the principle of fundamental fairness, “[i]t is a misapplication of this rule ... to uphold an illegal argument under the guise of ‘reply in kind,’ where the initial argument, to which the purported reply is addressed, is itself a legally permissible comment to the jury.” Ex parte Rutledge, 482 So.2d 1262, 1264 (Ala.1984), on remand, 482 So.2d 1269 (Ala.Cr.App.1985), appeal after remand, 523 So.2d 1087 (Ala.Cr.App.1987), reversed, 523 So.2d 1118 (Ala.1988). Because there is no exception to the exclusionary rule to allow the admission of collateral good acts to show good intent, motive or design, the defense witness’s testimony would have been illegal and was properly excluded.
IV
The appellant argues that the trial court erred in overruling his objections to questions asked him by the prosecutor concerning the disposition of a theft of services charge from January 10, 1984. However, the appellant has failed to state any supporting legal authority, thus this issue is waived. Johnson v. State, 500 So.2d 494, 498 (Ala.Cr.App.1986). We also note that the defense counsel’s objection came too late, as the appellant had already responded that he was not found guilty by a jury of that charge, before defense counsel objected. Royster v. City of Montgomery, 470 So.2d 1348 (Ala.Cr.App.1985); Hill v. State, 378 So.2d 249 (Ala.Cr.App.1979), cert. denied, 378 So.2d 256 (Ala.1979).
AFFIRMED.
All Judges concur.