[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 203 
In separate indictments, Robert James Smith was charged with the offenses of first degree rape, in violation of §13A-6-61(a)(1), Code of Alabama 1975, and first degree burglary, in violation of § 13A-7-5(a)(1), Code of Alabama 1975. The cases were consolidated for trial, and the jury found Smith guilty of both offenses as charged in the indictments. Smith was sentenced to two concurrent 20-year terms of imprisonment. Four issues are raised on appeal.
 I
Smith contends that the trial court erred in denying his motion for judgment of acquittal at the close of the State's case because, he argues, the State failed to present sufficient evidence of rape in the first degree and burglary of in the first degree.
In reviewing the denial of a motion for judgment of acquittal, this court must determine whether any evidence tending to point to the accused's guilt was before the trial court when that motion was made. LaBarber v. State,455 So.2d 941 (Ala.Cr.App. 1984). In addition, the State's evidence must be received as true and must be viewed in a light that is most favorable to the State. McConnell v. State, 429 So.2d 662
(Ala.Cr.App. 1983). Finally, the State must be accorded all legitimate inferences arising from the evidence presented.White v. State, 546 So.2d 1014 (Ala.Cr.App. 1989).
 A. The Rape Charge
Smith complains that the State failed to produce sufficient evidence of the elements of forcible compulsion, as required by § 13A-6-61(a)(1), Code of Alabama 1975.
Section 13A-6-61(a)(1) defines the offense of first degree rape as follows: "(a) A male commits the crime of rape in the first degree if: (1) He engages in sexual intercourse with a female by forcible compulsion. . . ."
Section 13A-6-60(8), Code of Alabama 1975, defines "forcible compulsion" as follows: "Physical force that overcomes earnest resistance or a threat, express or implied, that places a person in fear of immediate *Page 204 
death or serious physical injury to himself or another person."
The element of forcible compulsion may be satisfied in cases where an implied threat serves as motivation for the victim to engage in sexual intercourse or deviate sexual activity with the defendant. Flanagan v. State, 533 So.2d 637, 641
(Ala.Cr.App. 1987), rev'd on other grounds, 577 So.2d 559 (Ala. 1991). In Parks v. State, 565 So.2d 1265 (Ala.Cr.App. 1990), this court held that the victim's fear that the defendant would beat her with a belt if she refused to have intercourse with him satisfied the forcible compulsion element.
In the case at bar, the victim testified that at about 2:00 a.m. on February 20, 1991, she awoke to find Smith on top of her in her bed. According to the victim, her bedroom was lit by a streetlight light outside her bedroom window, and she was able to see and recognize Smith, whom she had seen at her bus stop several times, as the man lying on top of her.
According to the victim, Smith told her to pull his pants down and, he called her a "bitch" and told her that he would kill her if she said anything or tried to do anything. The victim testified that she believed that Smith really might kill her if she did not do what he said, because he was talking harshly and because he appeared to mean what he was saying. The victim further testified that Smith repeatedly called her a "bitch" and that he kept telling her to shut up and not to move or that he would kill her. She also testified that she was afraid of him because she thought he had something in his hand, although she did not actually see the object at that point in time.
The victim testified that Smith put his penis inside her vagina and that she did not participate of her own free will but rather because Smith forced her.
According to the victim, shortly after Smith began forcibly having intercourse with her, he placed something on a shelf above the victim's head. The victim testified that she then felt Smith's hand and that when she discovered that his hand was empty, she began fighting with Smith and pushed him off of her.
The victim further testified that during this struggle, she reached up to the shelf to grab what she thought was Smith's knife but instead grabbed a spoon. The victim testified that she then mistakenly thought that Smith had been armed only with a spoon, and she continued to fight Smith. According to the victim, she hit Smith with the spoon, and Smith threw her back on the bed and started hitting her in the face. The victim then scratched Smith's face, and Smith bit her finger.
The victim testified that she fought with Smith into the hallway of her house and that Smith hit her in the face one more time and then ran out the back door.
According to the victim, when Smith ran out of her house, she noticed that a window pane in the back door was broken, that there was broken glass on the floor inside the house, and that the back door was unlocked.
The victim further testified that after locking the back door, she tried to call the police but discovered that her telephone cord had been cut. She then ran next door to her neighbor's house, where she called the police.
Detective J.R. Ward of the Montgomery Police Department testified that when he arrived at the victim's house in the early morning hours of February 20, 1991, he found an open pocket knife on the shelf above the victim's bed. According to the victim, this knife did not belong to her, the knife was not on the shelf when she went to bed on the night in question, and no one but Smith could have put the knife on the shelf. The victim testified that the spoon that she had grabbed from this shelf during her struggle with Smith did belong to her.
Detective Ward further testified that he found a necktie and a blue golf hat lying in the victim's bedroom. According to the victim, she snatched the necktie off Smith during her struggle with him.
According to Detective Ward, the victim's finger was bleeding when the police *Page 205 
arrived. Ward also testified that the window in the victim's back door had been broken from the outside and that the broken glass was lying on the inside. He further testified that the window was broken adjacent to the door knob so that, after the glass was broken, a person could reach in and unlock the door.
The foregoing evidence was clearly sufficient to establish the element of forcible compulsion. Smelcher v. State,520 So.2d 229 (Ala.Cr.App. 1988). The fact, moreover, that the victim struggled earnestly with Smith once she mistakenly believed that he had not been armed with a knife only strengthens the evidence of forcible compulsion that the State presented in this case. Id. 282.
We note that the lack of a finding of semen is irrelevant, in a prosecution for rape, because sexual intercourse, as defined in § 13A-6-60(1), Code of Alabama 1975, occurs upon any penetration of the vagina, however slight, and emission is not required. The State, moreover, may present a prima facie case of first degree rape based solely upon the victim's testimony, and medical testimony or other physical evidence corroborating the victim's testimony is not required. Webb v. State,455 So.2d 223, 226 (Ala.Cr.App. 1984).
Hence, the trial court properly denied the motion for judgment of acquittal with respect to the first degree rape charge because the State presented sufficient evidence of forcible compulsion.
 B. The Burglary Charge
Smith complains that the State failed to present sufficient evidence 1) that he knowingly and unlawfully entered or unlawfully remained in the victim's apartment; 2) that he intended to commit the crime of rape when he entered the apartment; and 3) that he was armed with a deadly weapon.
Burglary in the first degree is defined in § 13A-7-5(a)(1), Code of Alabama 1975, as follows:
 "(a) A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in dwelling or in immediate flight therefrom, he or another participant in the crime:
 "(1) Is armed with explosives or a deadly weapon. . . ."
"A person 'enters or remains unlawfully' in or upon premises when he is not licensed, invited or privileged to do so." §13A-7-1(4), Code of Alabama 1975.
The victim testified that when she went to bed, alone, on the night in question, her back door was locked and the window in that door was intact. The victim further testified that after Smith forced her to have sexual intercourse with him by threatening her verbally, he fled her apartment through the back door. According to the victim, when Smith fled the apartment, the back door was unlocked, the window pane adjacent to the door knob was broken out, broken glass was lying on the floor inside the apartment, and the telephone cord in her living room had been cut.
The foregoing testimony clearly presented a prima facie case of unlawful entry of the victim's dwelling by Smith. Holmes v. State, 497 So.2d 1149, 1153 (Ala.Cr.App. 1986).
The jury, moreover, could infer Smith's intent to commit a rape from the victim's testimony that Smith threatened to kill her if she tried to move and that Smith forced her to have sexual intercourse with him. See Richardson v. State,456 So.2d 1152, 1154 (Ala.Cr.App. 1984).
Finally, the victim's testimony that Smith appeared to have something in his hand when he threatened her and that he placed this object on the shelf above her bed, coupled with evidence that an open pocket knife that did not belong to the victim was found on the shelf above the victim's bed, was clearly sufficient to establish that Smith had been armed with a knife while effecting entry or while in the victim's dwelling.See Pardue v. State, 571 So.2d 333 (Ala. 1990). Because a knife is a deadly weapon under § 13A-1-2(11), Code of Alabama 1975, the State clearly *Page 206 
established that Smith was armed with a deadly weapon while effecting entry or while in the victim's dwelling.
Hence, the trial court properly denied the motion for judgment of acquittal with respect to the first degree burglary charge because the State presented a prima facie case of first degree burglary.
 II
Smith contends that the trial court erred in refusing to allow him to present evidence of his alleged history of securing prostitutes for sexual pleasure to establish habit. In particular, Smith sought to offer the testimony of two prostitutes who, on other occasions, had seen Smith hire prostitutes in the area in which Smith testified that he met the victim on the night in question and paid her to have sex with him.
In his offer of proof at trial, defense counsel contended that Smith and the two prostitutes would testify that Smith had previously hired prostitutes in a certain area, and that this testimony would show that Smith's motive for approaching the victim in the same area on the night in question was to hire her as a prostitute. The prosecutor strenuously objected to this offer of proof, and the trial court refused to permit defense counsel to present the testimony of Smith and the two prostitutes concerning Smith's alleged history of securing prostitutes for sexual pleasure to establish a pattern of behavior. In so ruling, the court noted that neither prostitute had ever witnessed Smith allegedly hiring the victim as a prostitute in the past or on the night in question.
On appeal, Smith argues for the first time that the proposed testimony was admissible not under the motive exception to the collateral evidence rule, as argued at trial, but rather under the habit exception.
It is axiomatic that a defendant is bound on appeal by the grounds stated at trial and that review by this court is limited to matters properly raised in the trial court.Vinzant v. State, 462 So.2d 1037, 1040 (Ala.Cr.App. 1984). Because Smith did not expressly raise the habit exception as a ground for the admissibility of this evidence at trial, this court cannot consider this ground for the first time on appeal.
We note that even had Smith seasonably raised the habit exception at trial, the trial court properly excluded the evidence of Smith's alleged history of securing prostitutes for sexual pleasure. Evidence of collateral conduct generally is not admissible to show how an individual acted on the occasion that is the subject of the litigation. Salter v. State,527 So.2d 791, 794 (Ala.Cr.App. 1988). Only where such collateral acts are numerous and occur under substantially the same circumstances do they qualify as "habit" evidence from which the factfinder can infer that, on the occasion in question, the person acted in keeping with that habit. C. Gamble, McElroy'sAlabama Evidence § 42.01(1) (4th ed. 1991).
 III
Smith contends for the first time on appeal that a certain instruction that the trial court gave the jury regarding the desirability of reaching a verdict was impermissibly suggestive and coercive.
An objection to a jury instruction cannot be raised for the first time on appeal. Cox v. State, 500 So.2d 1296, 1299
(Ala.Cr.App. 1986). Because Smith raises this objection to the court's oral charge for the first time on appeal, consideration of this issue is procedurally barred.
 IV
Smith argues that the trial court erred in refusing his request that the jury be instructed on the lesser included offenses of burglary in the second degree, burglary in the third degree, and sexual assault.
A request to instruct or an objection to an instruction that is made when the jury returns with a question or for reinstruction is untimely. Goins v. State, 521 So.2d 97, 98-99
(Ala.Cr.App. 1987).
In the case at bar, defense counsel requested that the court charge the jury on *Page 207 
the lesser included offenses only after the jury returned from deliberations with a question. Once the jury retires to deliberate, any objection to the trial court's charge or any request for a particular instruction is untimely. Hence, Smith did not preserve any claim of error in the trial court's failing to instruct on lesser included offenses.
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a former Alabama Supreme Court Justice, and his opinion is hereby adopted as that of the court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.