MONTIEL, Judge.
The appellant, Joe Michael Greathouse, was indicted for rape in the first degree, a violation of § 13A-6-61, Code of Alabama 1975. The jury found Greathouse guilty as charged, and the trial court sentenced him to 40 years in prison.
The evidence adduced at trial tended to show the following. The victim in this case, T.T., testified that she had been out with friends and had returned home shortly after midnight on March 12, 1993. When she came in, she said, she locked the deadbolt behind her. T.T. said that while she was *601 getting ready for bed, she heard a crashing sound. She walked into the living room and saw that her living room door was cracked opened. When she touched the doorknob,. T.T. said, the door casing fell to the floor. T.T. testified that she looked out, but that she did not see anything unusual. As she turned to go back inside, T.T. said, Great-house was suddenly in front of her, “charging” at her. T.T. said Greathouse pushed her back onto a loveseat, and pushed the door closed with his feet. T.T. said she was trying to get to the door, but Greathouse dragged her away with his hand over her mouth. T.T. said that at one point she got her mouth free and screamed as loud as she could, but that Greathouse hit her, causing her head to hit the wall with enough force to raise a knot on her head. When she tried to scream again, T.T. said, Greathouse hit her with the back of his hand causing her nose to bleed. She said he dragged her to the bedroom, pushed her down onto the bed and climbed on top of her. T.T. testified that Greathouse started kissing her on the mouth but she did not kiss him back, and that she did not consent to be kissed by him. T.T. testified that Greathouse removed his shorts and tried to get her to perform oral sex on him, but she kept turning her face away and kept her mouth closed. Greathouse had his knees across her shoulders, holding her down, T.T. said. She added that she was resisting as much as she could, but that she could not move much because of his weight.
T.T. said Greathouse pulled her nightshirt up to her chin and kissed her on her chest and stomach. He inserted his fingers into her vagina, then had sexual intercourse with her. T.T. testified that during this episode she was afraid and that she had not consented to have sexual intercourse with Great-house.-
After he finished, T.T. said, Greathouse pushed her back into the living room, and motioned for her to turn off the television and the lights. After she did so, he pushed her back into the bedroom, pushed her onto the bed, then left the room, and closed the door behind him. T.T. said Greathouse never said anything throughout her ordeal.
T.T. said when Greathouse left, she ran downstairs to get help and saw a neighbor. She said she told the neighbor she had been raped, and the neighbor’s girlfriend called the police. T.T. was taken to the hospital and examined. In court, T.T. identified Greathouse as the man who raped her.
Katherine McGeehan of the Alabama Department of Forensic Sciences testified that she found semen in the jeans that T.T. wore to the hospital, as well as on the nightshirt T.T. was wearing when the incident occurred. The semen stains were consistent with blood samples taken from Greathouse. A hair found on the bed at T.T.’s apartment was tested and was found to be consistent with Greathouse’s hair.
Sergeant Sorrells of the Dothan Police Department testified that after Greathouse was read his Miranda rights he signed a waiver of those rights, and confessed to raping T.T. Sorrells said the police did not threaten Greathouse or make any promises to him or induce him to make the statement.
Although Greathouse did not testify at the trial, he did testify during a suppression hearing. At the hearing, he testified that the police had induced him to give a statement by telling him he would be charged with a lesser offense or a lower bond would be set if he would “come clean” with them. On cross-examination, Greathouse said he had once been a reserve deputy with the Geneva County Sheriffs Department and that he had been present when offenders had been arrested and read their Miranda warnings.
I
Greathouse claims that his trial counsel was ineffective because, he says, he failed to request a jury instruction for lesser included offenses and he failed to present mitigating evidence during the sentencing portion of the trial. Our review of the record, however, shows that this issue was never presented to the trial court and is being raised for the first time on appeal. Claims of ineffective assistance of counsel may not be considered for the first time on direct appeal. Ex parte Jackson, 598 So.2d 895 (Ala.1992).
*602 II
Greathouse contends that the trial court erred in failing to suppress his confession, which he claims was involuntary. Greathouse claims police induced him to confess by telling him he would be charged with a lesser offense or that bond would be set at a lower amount if he would “come clean” with them. In his brief to this court, Greathouse also contends that he was held in isolation for two days and denied contact with an attorney or with his wife, and that police had told him that they did not have to provide an attorney because he was already in custody. He also claims that at the time of his arrest, he was under the influence of steroids. Great-house’s claims as to this issue are without merit.
Sergeant Sorrells of the Dothan Police Department testified that Greathouse was given Miranda warnings twice, but that he did not ask for an attorney. Further, Sorrells said, he never told Greathouse that if he talked with police, he would be charged with a lesser offense or that a lower bond would be set. In fact, Sorrells testified, he told Great-house that the range of punishment was left to the district attorney’s office and the judge, and that he could not do anything for Great-house. In addition, Sorrells said, he told Greathouse that he could not make any promises. He said he did not discuss the amount of bond "with Greathouse. Finally, Sorrells said that when he talked with Great-house, Greathouse did not seem to be under the influence of alcohol or drugs. ' Furthermore, Greathouse had been a reserve deputy sheriff, and was familiar with his rights. He signed waivers acknowledging that he made his statement without any promises or inducements.
When the evidence concerning the voluntariness of a statement is conflicting, a question of fact is presented to the trial court. Callahan v. State, 557 So.2d 1292 (Ala.Crim.App.) aff'd, 557 So.2d 1311 (Ala.1989), cert. denied, 498 U.S. 881, 111 S.Ct. 216, 112 L.Ed.2d 176 (1990). “When there is conflicting evidence of the circumstances surrounding an incriminating statement or a confession, it is the duty of the trial judge to determine its admissibility, and if the trial judge decides it is admissible, his decision will not be disturbed on appeal unless found to be manifestly contrary to the great weight of the evidence.” Ex parte Matthews, 601 So.2d 52 (Ala.1992), cert. denied, — U.S. —, 112 S.Ct. 2996, 120 L.Ed.2d 872 (Ala.1992). The trial court need only be convinced of the voluntariness of the statement by a preponderance of the evidence. Malone v. State, 452 So.2d 1386 (Ala.Crim.App.1984).
In this case, the trial court’s determination that Greathouse’s statement was given voluntarily, without any kind of inducement, is supported by a preponderance of the evidence. Therefore, we hold that the trial court did not err in failing to suppress Great-house’s statement on the basis that it was involuntary.
Ill
Greathouse argues that the trial court erred by refusing to charge the jury on the lesser included offense of attempted rape. Greathouse argues that because no semen was found during T.T.’s vaginal examination, and because there was no evidence of forcible entry into the vagina, whether there was penetration was questionable. The trial court’s refusal to charge the jury on attempted rape, Greathouse contends, prejudiced him because the only alternatives for the jury were to find him guilty of rape or not guilty.
The trial court is not required to charge the jury on lesser included offenses when the evidence presented at trial points either to the defendant’s guilt of the charged offense, or to his innocence. “An accused is not entitled to have the jury charged on a lesser included offense unless there is a reasonable theory from the evidence to support the lesser offense.” Holder v. State, 584 So.2d 872, 880-81 (Ala.Crim.App.1991) (quoting Nelson v. State, 452 So.2d 1367, 1371 (Ala.Crim.App.1984)). While evidence of injury to the vagina may be useful to prove penetration, it is not essential. Injury is not an element of rape. Lanton v. State, 456 So.2d 873 (Ala.Crim.App.1984). Whether semen was found in T.T.’s vagina during the medical examination is immaterial because *603 ejaculation is not an element of rape. Smith v. State, 601 So.2d 201, 205 (Ala.Crim.App.1992).
In this case, the victim testified that Great-house penetrated her vagina with his penis, and that she observed Greathouse take his penis out of her vagina. The State need not prove injury or ejaculation. The jury also heard Sergeant Sorrells testify that Great-house admitted raping T.T. The evidence presented in this case supported a finding of rape in the first degree, not attempted rape. The trial court did not err in refusing to charge the jury on attempted rape.
IV
Greathouse contends that the evidence presented in this case is insufficient to support his conviction for rape in the first degree because, he says, the State did not prove the element of forcible compulsion. This argument is without merit.
In his brief to this court, Greathouse argues unconvincingly that “[tjhere was not a threat of any kind against the victim.” He contends that the victim was not in fear for her life, and argues that “[tjhere [were] only two backhanded strikes causing a bloody nose and a bump on the head.” He further argues that there was no weapon used and that after the victim stopped trying to scream, she did not'resist going to the bedroom or having intercourse.
The element of forcible compulsion may be found in cases where an implied threat serves as motivation for the victim to engage in sexual intercourse. Smith v. State, 601 So.2d at 204. A victim’s fear that she could be beaten if she refused to have intercourse satisfies the forcible compulsion element of first degree rape. Parks v. State, 565 So.2d 1265 (Ala.Crim.App.1990).
In this case, the defendant’s actions go beyond an implied threat. The evidence in this case is that Greathouse, whom the victim did not know, tried to break down the door to her apartment, and when the victim went in to investigate why her door was partly open, Greathouse shoved her back inside the house. The victim testified that she tried to get to the door but Greathouse pulled her back. When the victim attempted to scream, Great-house hit her. She tried to scream again, and he hit her again. The victim’s testimony was that Greathouse dragged her to the bedroom and had sex with her against her will. The victim also testified that she was afraid of Greathouse.
This evidence is sufficient to prove forcible compulsion, and the defendant’s contention to the contrary is without merit.
For the above reasons, the judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.